UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| MARY ANN SULLIVAN | CIVIL ACTION NO. 07-cv-1973 |
| VERSUS | JUDGE WALTER |
| US COMMISSIONER SOCIAL SECURITY ADMINISTRATION | MAGISTRATE JUDGE HORNSBY |

**REPORT AND RECOMMENDATION**

**Introduction**

Mary Sullivan ("Plaintiff") filed an application for Supplemental Security Income payments in 1999. She based her claim on depression, anxiety, headaches, and hypertension. The agency denied the claim, and this court affirmed the decision in Sullivan v. Commissioner, 04-cv-0395. Plaintiff filed a second application. After various agency proceedings, ALJ Osly Deramus held a hearing and denied the claim. The Appeals Council denied a request for review, and Plaintiff filed this civil action seeking the limited judicial relief that is available under 42 U.S.C. § 405(g).

**Standard of Review; Substantial Evidence**

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. Villa v. Sullivan, 895 F.2d 1019, 1021 (5th Cir. 1990). "Substantial evidence is more than a scintilla and less than a preponderance. It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Muse v. Sullivan, 925

F.2d 785, 789 (5th Cir. 1991). A finding of no substantial evidence is justified only if there are no credible evidentiary choices or medical findings which support the ALJ's determination. Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988).

**Issues on Appeal**

The scheduling order requires a claimant to set forth specific assignments of error on appeal. Plaintiff lists three: (1) A general assertion that the ALJ did not have substantial evidence to support his decision; (2) An argument that the ALJ did not properly apply the treating physician rule; and (3) An argument that the ALJ did not have evidence that there were jobs available that Plaintiff could not only perform at times but also maintain.

**Summary of the ALJ's Decision**

Plaintiff was 34 years old at the time of hearing. She did not complete school, but she did earn her GED. She had work experience as a lumber tagger and assembly line worker. The ALJ analyzed Plaintiff's claim pursuant to the five-step sequential analysis set forth in 20 C.F.R. § 416.920 (regulations governing claims for Supplemental Security Income) and described in Barnhart v. Thomas, 124 S.Ct. 376, 379-80 (2003). See also Perez v. Barnhart, 415 F.3d 457, 461 (5th Cir. 2005).

The ALJ found no evidence that Plaintiff had engaged in substantial gainful activity (step one) since her alleged onset date in January 1999. Tr. 23. The ALJ reviewed the evaluations of Plaintiff's mental health. He found that Plaintiff's depression, anxiety, and headaches were "severe" impairments (step two) within the meaning of the regulations, but

they were not so severe as to meet or medically equal a listed impairment (step three) that would require an automatic finding of disabled regardless of Plaintiff's age, education, or work experience. Tr. 23-27.

The ALJ then assessed Plaintiff's residual functional capacity ("RFC"). After reviewing the medical evidence, assessing Plaintiff's credibility, and considering the opinion of the state agency medical experts, the ALJ found that Plaintiff had the RFC for unskilled work at the medium exertional level. He specifically found that Plaintiff had the abilities to meet the basic mental demands of such unskilled work, including the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to make judgments that are commensurate with the functions of unskilled work; to respond appropriately to supervision, co-workers, and work situations; and deal with changes in a routine work setting. Tr. 27-29.

The ALJ then turned to step four, whether the claimant is capable of performing the demands of her past relevant work, either as she actually performed it or as the job is generally performed in the national economy. Plaintiff had past relevant work in a lumber yard or sawmill placing tags on lumber to mark the grade of the lumber. The job required her to be on her feet most of the day and to carry lumber around the yard. The ALJ also looked to the Dictionary of Occupational Titles for the description of the job of Lumber Sorter. The job was defined as unskilled medium work, requiring typical sorting and grading activity. The ALJ noted that Plaintiff had quit her job as a lumber tagger or sorter because

she was worried about her job performance, but she was not fired and she was able to perform the work when she left the job. He determined that Plaintiff still had the RFC to perform her past relevant work, so Plaintiff was deemed not disabled at step four. Tr. 29-30.

**Substantial Evidence**

Plaintiff's first issue is a general assertion that the ALJ lacked substantial evidence to support his decision. Plaintiff's memorandum reviews aspects of some of the medical reports and suggests that a different conclusion is in order.

Plaintiff was referred by her attorney for an examination by Dr. Richard Galloway, a licensed rehabilitation counselor. Plaintiff told Dr. Galloway about her family background, including her one marriage to a husband who died in February of 2001. Plaintiff said she was unable to work because of depression and migraine headaches that she had every day. She had been treated by a family practitioner in Ringgold, where she was living, and had visited the Red River Mental Health Treatment Center for monthly counseling, with a visit to the Center's psychiatrist every six months or so. Plaintiff said her only physical problem was with hypertension, which was controlled at times by her medication. Plaintiff said she had crying spells "all of the time" that would last for days.

Dr. Galloway reviewed the Mental Health Center records, as well as other records, and conducted an intelligence test. The scores indicated limited educational ability but sufficient academic skills to perform many jobs in the economy. The mental health records

indicated a global assessment of functioning ("GAF") of 65.[1] Dr. Galloway concluded that the medical records did not indicate any vocational restrictions, but it was "apparent that Plaintiff would have significant restrictions because of her GAF and her major depression." He asked for more recent medical information. Tr. 160-64. Counsel for Plaintiff provided updated records, and Dr. Galloway said he saw little to change his opinion from his original report. Tr. 159.

One of the reports that Dr. Galloway examined was by Thomas E. Staats, Ph.D., a clinical neuropsychologist who conducted a consultative examination for the agency in 1999. Plaintiff's husband was then alive, but Plaintiff reported a lot of stress due to his poor health. Dr. Staats found that Plaintiff's thinking was adequate in regard to content and reality testing, and her understanding was intact. Her sustained concentration was marginal, persistence was poor, and social interaction was adequate. The prognosis was fair to guarded. Tr. 168-69.

Dr. Scott Phillips wrote a short letter in 2002 and stated that Plaintiff had been a patient for the past two and one-half years. He said Plaintiff suffered from major depression brought on by the recent death and prolonged illness of her husband, and he opined that Plaintiff could not perform "any type of work second(ary) to extreme difficulty concentrating and decreased energy." He did observe that her prognosis was good with treatment. Tr. 307.

---

[1] A GAF of 61 to 70 is described as: "Some mild symptoms OR some difficulty in social, occupational, or school functioning, but generally functioning pretty well, has some meaningful interpersonal relationships."

Mark Dulle, Ph.D., a clinical psychologist, conducted a consultative examination in 2002. The assessment was similar to that of the other reports, but Dr. Dulle stated that Plaintiff's prognosis appeared poor. She presented to him as depressed with little hope or idea how to improve her lot in life. Tr. 384-86.

Plaintiff does not argue that she has any physical limitations inconsistent with the RFC found by the ALJ. She argues only that the evidence regarding her mental health suggests a greater limitation. The Commissioner points out evidence in more recent years since those reports in which Plaintiff appeared to be improved. For example, Plaintiff was quoted in a 2004 record as stating that she was "much better" with regard to her depression. Tr. 1028. In a mental health clinic record from 2006, Plaintiff said she was "doing better" but still had bouts of crying spells. Tr. 958-59.

The evidence discussed above provided the ALJ with credible evidentiary choices to support his finding that Plaintiff had the ability to meet the basic mental demands of unskilled work, such as understanding simple instructions, responding appropriately to supervision, and dealing with changes in a routine unskilled work setting. Plaintiff obviously has some depression and mental health problems, and the ALJ did not wholly discount them. Rather, he recognized their existence but determined that the limitations were not so severe as to preclude Plaintiff from performing the basic mental demands of unskilled work. The record provides substantial evidence to support that decision.

**Treating Physician Rule**

Plaintiff argues that the ALJ did not follow the appropriate procedures required to discount the opinion of a treating physician, such as is described in <u>Newton v. Apfel</u>, 209 F.3d 443 (5th Cir. 2000). The reports by Dr. Dulle, Dr. Staats, and Dr. Galloway were not from treating sources. Each of those examiners merely conducted a consultation and had no history of treatment of Plaintiff. Dr. Phillips did report a history of treatment, but his one-paragraph letter was not specific as to any mental limitations, was conclusory with regard to his 2002 assessment that Plaintiff could not perform any type of work, and he stated then that her prognosis was good with treatment. Later records show that Plaintiff did receive treatment, including medication, and made some improvements. Plaintiff has not established that the ALJ committed reversible error in his assessment of the opinion evidence.

**Maintaining Work**

Plaintiff argues that the ALJ did not have evidence to establish that she could maintain a job even if she could perform its demands at times. Plaintiff's argument about maintaining an available job invokes the Fifth Circuit's <u>Singletary</u> decision, which interpreted disability under the Act to apply to cases in which a person is capable of working for short periods but can not *maintain* a job because his impairment flares up too often. <u>Singletary</u> does not, however, require every decision by an ALJ include a separate finding regarding the claimant's ability to maintain a job. <u>Frank v. Barnhart</u>, 326 F.3d 618, 621 (5th Cir. 2003). An ALJ's finding that a claimant can perform a certain level of work necessarily includes a

finding that he is able to perform at that level not just intermittently but eight hours a day, five days a week. A separate and express finding regarding maintaining work is required only when the claimant's ailment "waxes and wanes in its manifestation of disabling symptoms." Id. See also Dunbar v. Barnhart, 330 F.3d 670 (5th Cir. 2003). The ALJ's basic decision with respect to disability was upheld above, and there is no indication in this record that a separate finding with regard to maintaining employment was required.

Accordingly;

**IT IS RECOMMEND** that the Commissioner's decision to deny benefits be **affirmed** and that Plaintiff's complaint be **dismissed with prejudice**.

### Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 10 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to

proposed factual findings and legal conclusions accepted by the district court. See <u>Douglass v. U.S.A.A.</u>, 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 26th day of January, 2009.

MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE